DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Alexander Solomon, appeals from an order by the Ottawa County Court of Common Pleas which granted summary judgment in favor of appellee, Baycliffs Homeowners Association, Inc. ("Baycliffs"). For the reasons that follow, we reverse.
 {¶ 2} The facts giving rise to the instant appeal are as follows. Appellee Baycliffs is a condominium association that oversees condominium units located in Marblehead, Ohio. Appellant Solomon is a Baycliffs condominium unit owner.
 {¶ 3} On or about April 29, 2004, Baycliffs filed the instant action against Solomon to foreclose upon liens filed against his property and to obtain payment for maintenance fees and assessments alleged to be due and owing to the condominium association from Solomon and for attorney fees and costs related to the collection process. In his answer, Solomon denied that he owed money to Baycliffs and denied ever having joined the condominium association.
 {¶ 4} On or about August 20, 2004, Baycliffs filed its motion for summary judgment, stating that documentation evidencing the chain of title on Solomon's property showed him to be a member of the homeowner's association and that, by virtue of this association membership, Solomon was required to pay the disputed assessments.
 {¶ 5} Solomon filed a response, with an affidavit attached, wherein he denied being an association member and stated that documents which showed otherwise — and were relied upon by the association in its motion for summary judgment — were fraudulently recorded. Specifically, the affidavit provided:
 {¶ 6} "I, Alex Solomon, do hereby state as follows:
 {¶ 7} "In July of 1992, I purchased a vacant lot from the Baycliffs Corporation known as 3635 South Confederate Drive in Marblehead, Ohio. I agreed at the time to execute documents in which I would join the Homeowners Association once it was properly formed and also agreed to execute the declarations forming the new associations once they were reduced to their final form consistent with the temporary document given to me at the time of purchase. The developer, Carl Zipfel[,]promised me the chance to review the Homeowners Association Declaration documents before I sign [sic] them for filing. According to Zipfel, that is the reason they had to be signed by me before they were filed.
 {¶ 8} "I was the first to buy a lot from the developer Baycliffs Corporation, a development run by developer Car [sic] Zipfel. I built a home on this lot almost immediately. Not much happened at Baycliff after that until 1995 when others began to buy other lots and building of additional homes started.
 {¶ 9} "Finally, in 1995 the Baycliff Homewoners Association Declaration documents were filed in Ottawa County. I did not sign these declaration documents as I had been promised in writing and I did not join the Association for this reason and for many others, including the Association's inability to live up to its obligations to complete the development.
 {¶ 10} "Myself and the Association, through its sole officer, Carl Zipfel, continued to agree that I was not a member of the Association. In fact, as the years went by, I was not even billed for Association dues or expenses because Zipfel knew that I was not a member.
 {¶ 11} "Despite the Association's inability to complete the project (though Zipfel continued in his efforts) things proceeded along smoothly from my standpoint. Whatever the Association's problems, I was happy to be independent of them.
 {¶ 12} "That's when something strange occurred.
 {¶ 13} "I decided to buy additional property from the Baycliff Corporation in 1998. This property is known as 3638 and 3640 South Confederate Drive, a new vacant double lot. I was asked by Zipfel at the time of purchase to include this new lot in the Homeowners Association. I agreed, reminding Zipfel that the new lot was joining the Association but that the original lot at 3635 South Confederate Drive was not joining the Association and remained independent.
 {¶ 14} "I signed the documents causing the new property to join the association, but not before I noticed something. The documents putting the new lot into the Association referred to the PARCELS and not PARCEL. I feared that signing would somehow be used to include my first lot in the Association, so I crossed out the "S" at the end of PARCELS to make it read PARCEL just in case.
 {¶ 15} "I completed the payment requirements to obtain the new lot and signed the documents as described above.
 {¶ 16} "To my great chagrin, despite having paid for the new parcel, the new lot was never transferred to my name. I have contacted the title company and I expect a resolution of that matter soon.
 {¶ 17} "In the meantime, the title company took consent documents signed by me regarding the new lot joining the Association and attached them to a legal description of the First parcel at 3635 South Confederate Drive. This act of fraud became a recorded fact in the Recorder's office and is the basis of the chain of title referred to in the Plaintiff's Motion for Summary Judgment.
 {¶ 18} "The documents regarding my attempt to purchase the new lot are attached for the Court's perusal. One can see that I signed the documents in 1998 as part of that transaction and not as an effort to have the first parcel included in the Association."
 {¶ 19} In a decision dated October 29, 2004, the trial court determined that the Solomon affidavit was inadmissible in its entirety because it failed to conform to the requirements of Civ. R. 56(E). Specifically, the court found:
 {¶ 20} "1.) The Affidavit is not made upon personal knowledge. [Fn.]1
 {¶ 21} "2.) The Affidavit does not affirmatively show that the Affiant is competent to testify to the matters stated therein. [Fn.]2
 {¶ 22} "3.) The Exhibits 2, 3, and 4 are not specifically referred to in the Affidavit [Fn.]3 and the documents are neither sworn to nor certified. [Fn]4
 {¶ 23} "[Fn.]1 `An affidavit without an averment of personal knowledge must show personal knowledge specifically.' Equitable Assurance Corp. v.Kuss Corp. (1984) 17 Ohio App.3d 136 @ 138.
 {¶ 24} "[Fn.]2 The Affiant `shall show affirmatively that the Affiant is competent to testify to the matter stated therein . . .' Wall v.Firelands Radiology, CA Huron, (1995) 106 Ohio App.3d 313.
 {¶ 25} "[Fn.]3 (Exhibit 1) simply states `that the documents regarding my attempt to purchase the new lot are attached for the Court's perusal. One can see that I signed the documents in 1998 as part of that transaction and not as an effort to have the first parcel included in the Association.'
 {¶ 26} "[Fn.]4 `Documents submitted in opposition to Motion for Summary Judgment which are not sworn, certified, or authenticated by affidavit have no evidentiary value and may not be considered by court in deciding whether genuine issues of material fact remains for trial.'Green v. B.F. Goodrich Co. (1993), 85 Ohio App.3d 223.
 {¶ 27} "These evidentiary requirements of Civil Rule 56(E) are mandatory and will be enforced even though the opposing party does not object to the admissibility of the evidence. Watts v. Watts (March 18, 1994) Lucas App No. 93-200, unreported. Bevier v. Pfefferle (October 22, 1999) CA Erie, E 99-020. Nor does it appear that the Exhibits annexed to Defendant's Affidavit have been admitted elsewhere in these proceedings.Ventre v. Board of Trustees, 1988 Ohio App Lexis 4413, Footnote 14. Thus Plaintiff's Motion for Summary Judgment is before the Court unopposed. [Fn.]5"
 {¶ 28} "[Fn.]5 `The Ohio Supreme Court has said that even an unopposed Motion for Summary Judgment must conform to the evidentiary requirements of Civil Rule 56(E). Dresher v. Burt, (1994) 75 Ohio State3d 280"
 {¶ 29} On November 23, 2004, Solomon filed a motion for reconsideration, attaching a new affidavit that contained the same substantive information as the first, but which purported to correct the defects that had previously been identified by the trial court. Specifically, Solomon changed the first paragraph of the affidavit to read, "I, Alex Solomon, being first duly sworn according to law, do hereby depose and state as follows:" He also inserted the following as his second paragraph: "I have personal knowledge of all the matters set forth in this Affidavit and I am competent to testify to these matters by virtue of my personal knowledge of them."
 {¶ 30} To what was originally the fifth paragraph of the affidavit, he added the statement: "Occasionally, I would attend a meeting of the Homeowners Association in order to be brought up to date on association plans. However, because I was not a member of the association I attended merely as an interested party, never as a voting member of the association." And to what was originally the tenth paragraph of the affidavit, he added the statement: "I then attended meetings of the association as a new member based on my 1998 purchase and the consent to join attached to that purchase as seen in Exhibit Four, attached hereto."
 {¶ 31} Finally, Solomon added statements wherein he swore that Exhibits 2, 3 and 4 were each accurate copies of original, identified, documents.
 {¶ 32} On December 17, 2004, the trial court issued a decision and judgment entry denying the motion for reconsideration, stating that even if the court were to have reconsidered its ruling, the result would have remained the same.
 {¶ 33} Solomon appeals from the trial court's entry of summary judgment, and raises the following assignments of error:
 {¶ 34} "I. THE TRIAL COURT ERRED IN TREATING PLAINTIFF'S SUMMARYJUDGMENT MOTION AS UNOPPOSED WHEN THE AFFIDAVIT ATTACHED TO DEFENDANT'SRESPONSE WAS PROPER AND WHEN AN AMENDED AFFFIDAVIT WAS SUBMITTED UPON AMOTION FOR RECONSIDERATION, ESPECIALLY IN LIGHT OF THE FACT THATPLAINTIFF'S AFFIDAVIT CONTAINED THE SAME ALLEGED FLAWS.
 {¶ 35} "II. THE TRIAL COURT ERRED IN AWARDING AN AMOUNT NOT PRAYED FORIN THE COMPLAINT AND FOR WHICH NO EVIDENCE, DOCUMENT, OR ALLEGATION HASEVER BEEN SUBMITTED TO THE TRIAL COURT."
 {¶ 36} Summary judgment standard.
 {¶ 37} An appellate court reviewing a trial court's granting of summary judgment does so de novo, applying the same standard used by the trial court. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Civ. R. 56(C) provides:
 {¶ 38} "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as considered in this rule. * * *"
 {¶ 39} Summary judgment is proper where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, a conclusion adverse to the nonmoving party. Rybergv. Allstate Ins. Co. (July 12, 2001), 10th Dist. No. 00AP-1243, citingTokles Son, Inc. v. Midwestern Indemnity Co. (1992), 65 Ohio St.3d 621,629.
 {¶ 40} The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of fact as to an essential element of one or more of the non-moving party's claims.Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. Once this burden has been satisfied, the non-moving party has the burden, as set forth at Civ. R. 56(E), to offer specific facts showing a genuine issue for trial. Id.
 {¶ 41} Admissibility of Solomon's affidavits and exhibits.
 {¶ 42} Solomon contends in his first assignment of error that the trial court erred in rejecting the affidavits he submitted in opposition to Baycliffs' motion for summary judgment. Because this contention constitutes a challenge of the trial court's determination of the admissibility of evidence, we proceed with our analysis mindful of the fact that "[t]he trial court has broad discretion in the admission of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the decision of a trial court." State v. Joseph
(1995), 73 Ohio St.3d 450, 460. We note that "[t]he term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 43} Civ. R. 56(E) sets forth certain criteria that an affidavit must meet in order to be considered for summary judgment purposes:
 {¶ 44} "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit. * * *"
 {¶ 45} In the instant case, the trial court found Solomon's first affidavit to be deficient because: (1) it was not made upon personal knowledge; (2) it did not affirmatively show that Solomon was competent to testify to the matters stated therein; (3) Exhibits 2, 3 and 4 were not specifically referred to in the affidavit; and (4) Exhibits 2, 3 and 4 were neither sworn to nor certified.
 {¶ 46} "Personal knowledge is knowledge of factual truth which does not depend on outside information or hearsay." Wall v. FirelandsRadiology, Inc. (1995), 106 Ohio App.3d 313, 335, citing Brannon v.Rinzler (1991), 77 Ohio App. 3d 749, 756. "An affidavit without an averment of personal knowledge must show personal knowledge specifically." Id., citing Equitable Assurance Corp. v. Kuss Corp.
(1984), 17 Ohio App. 3d 136, 138." However, where it is specifically set forth in an affidavit that the affidavit was made upon personal knowledge, such is sufficient to meet the requirement. State ex rel.Corrigan v. Seminatore (1981), 66 Ohio St.2d 459, 467.
 {¶ 47} Solomon argues, and this court agrees, that although the first affidavit did not contain an averment of personal knowledge, it was sufficient in that it did demonstrate personal knowledge specifically. See id. The affidavit, written in the first person, clearly states Solomon's personal knowledge of his own actions and experiences. Moreover, in the second affidavit not only was Solomon's personal knowledge specifically demonstrated, but also there was an express averment of personal knowledge — which, in itself, is sufficient to meet the requirement. For these reasons, we find that the trial court clearly erred when it determined that Solomon's affidavit failed to meet the personal knowledge requirement of Civ. R. 56(E).[1]
 {¶ 48} We next consider whether Solomon's affidavits adequately demonstrated Solomon's competency to testify. "To show competency to testify, the affiant must identify himself, his relationship to the parties or case, and the basis of his knowledge of the facts to which he attests." Boros v. O'Knoski (Sept. 24, 1993), 6th Dist. No. L-92-358, citing Fisher v. Lewis (1988), 57 Ohio App.3d 116, 117. There is no requirement that an affidavit contain an oath of competency. Id.
 {¶ 49} In both affidavits, Solomon demonstrated competency to testify by identifying himself, his relationship to Baycliffs, and the basis of his knowledge of the facts to which he attested: He identified himself as a Baycliffs unit owner who dealt with Baycliffs through its developer and development manager, Carl Zipfel, and he made clear that the basis of his knowledge consisted of his own actions and experiences. We, therefore, find that the trial court erred when it determined that the affidavits failed to affirmatively demonstrate Solomon's competency to testify to the matters stated therein.
 {¶ 50} We next address the admissibility of Solomon's Exhibits 2, 3, and 4. As indicated above, the trial court rejected them because they were not specifically referred to in the initial affidavit and because they were neither sworn to nor certified.
 {¶ 51} "The proper procedure for introducing evidentiary matter not specifically authorized by Civ. R. 56(C) is to incorporate it by reference in a properly framed affidavit pursuant to Civ. R. 56(E)." Biskupich v.Westbay Manor Nursing Home, 33 Ohio App. 3d 220, 222. "The requirement of Civ. R. 56(E) that sworn or certified copies of all papers referred to in the affidavit be attached is satisfied by attaching the papers to the affidavit, coupled with a statement therein that such copies are true copies and reproductions." State, ex rel. Corrigan, supra, at 467.
 {¶ 52} In both affidavits, Solomon referred to Exhibits 2, 3, and 4 when he referred to the "documents regarding [his] attempt to purchase the new lot * * * attached for the Court's perusal." In the second affidavit, Solomon went even further by separately referring to and describing each exhibit and its relevance to the stated testimony. The rule requires no more than this. To the extent that the trial court found otherwise, such finding was clearly in error.
 {¶ 53} Finally, we look to the question of whether the documentary evidence that was proffered by Solomon was properly sworn and certified in this case. Although the first affidavit contained no statement that the attached documents were true copies — and, therefore, could appropriately be deemed defective — the second affidavit had no such deficiency. To each of the three exhibits in the second affidavit, Solomon appended a statement wherein swore that the exhibit was an accurate copy.
 {¶ 54} For the foregoing reasons, we find that the trial court erred when it determined that Solomon's exhibits were inadmissible because they were not properly incorporated by reference in Solomon's affidavit.
 {¶ 55} Because the trial court's determination concerning the admissibility of Solomon's affidavits and the attached exhibits was wholly unsupported by the facts or the law, we find that such determination was unreasonable and, as such, constituted an abuse of discretion. In addition, because the trial court's erroneous decision resulted in Baycliffs' motion for summary judgment being construed as unopposed when, in fact, there were genuine issues of material fact that remained to be litigated, we find that Solomon was materially prejudiced thereby. See State v. Joseph, supra. Solomon's first assignment of error is, therefore, found well taken.[2]
 {¶ 56} Whether the trial court erred in awarding Baycliffs damages inthe amount of $8,407.
 {¶ 57} Solomon argues in his second assignment of error that the trial court erred in awarding Baycliffs damages in the amount of $8,407. Although this assignment of error is clearly moot as a result of our determination with respect to the first assignment of error, we will briefly address its merits.
 {¶ 58} Baycliffs' complaint prayed for damages in the amount of $2,108 for assessments incurred subsequent to the filing of the last lien, plus interests and costs, the cost of the preliminary judicial report, costs to release liens upon foreclosure, attorney fees and costs, and any additional relief. Although Baycliffs contends that the additional sum of $6,299 was for "costs and attorney's fees," the record contains no evidence of an amount of attorney fees, taxes and costs alleged to have been incurred.
 {¶ 59} A trial court is given broad discretionary powers in the award of attorney fees, and absent an abuse of discretion an appellate court will not disturb a trial court's decision. Stotridge v. Administrator,Bureau of Workers' Compensation, (June 3, 1992), 4th Dist. No. 91 CA 18. Here, we find that because there was no basis in the record to justify the $8,407 award, its granting constituted an abuse of discretion. Appellant's second assignment of error is therefore found well taken.
 {¶ 60} For all of the foregoing reasons, the judgment of the Ottawa County Court of Common Pleas is reversed. Appellees are ordered to pay the costs of this appeal for which sum judgment is rendered against appellees on behalf of Ottawa County and for which execution is awarded. See App. R. 24.
Judgment reversed.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4, amended 1/1/98.
Handwork, J., Singer, P.J., Skow, J., Concur.
[1] To the extent that Solomon relied upon statements by developer and development manager Carl Zipfel, such statements are clearly in the nature of party admissions and, therefore, are admissible as an exception to the hearsay rule. See Evid. R. 801(D)(2)(a); see also, Wall, supra, at 335.
[2] Having found that the trial court erred in rejecting Solomon's properly-framed affidavit, we find it unnecessary to reach the issue of whether Baycliffs' affidavit, which was deemed admissible, contained the same alleged flaws.